IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

   v.              15-CR-28-LJV

DANIEL HUZINEC,

     Defendant.

---

## GOVERNMENT'S SENTENCING MEMORANDUM

THE UNITED STATES OF AMERICA, by and through its attorney, James P. Kennedy, Jr., Acting United States Attorney for the Western District of New York, and the undersigned Assistant United States Attorney, respectfully files this sentencing memorandum in response to the defendant's sentencing memorandum (Dkt. #101) and in support of a guideline sentence of imprisonment.

## STATEMENT OF FACTS

The government concurs with and relies on the statement of facts outlined in the Revised Presentence Investigation Report, dated February 1, 2018 (Dkt. #97), at paragraphs 11 through 22.

## DISCUSSION

**In Considering the §3553(a) Factors, this Court Should Conclude That a Guideline Sentence of Imprisonment Provides the Proper Punishment for the Offense of Conviction**

The United States recognizes that since *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are advisory rather than statutorily mandated. However, when imposing a sentence, the Court is required to consider the guidelines, but must fashion a sentence that is consistent with the factors detailed in 18 U.S.C. § 3553(a). As noted by the Supreme Court, the guidelines have a "real and pervasive effect … on sentencing" and therefore, "are not only the starting point for most federal sentencing proceedings but also the lodestar." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016). The United States contends that a sentence of 168 to 210 months, the contemplated guidelines range, is reasonable and appropriate in light of the factors set forth in 18 U.S.C. § 3553(a).

Under Section 3553(a), the sentence imposed must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. *See United States v. Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006) ("In calibrating our review for reasonableness, we will continue to seek guidance from the considered judgment of the Sentencing Commission as expressed in the Sentencing Guidelines and authorized by Congress …. It bears noting that the Sentencing Commission is an expert agency whose statutory charge mirrors the § 3553(a) factors that the district courts are required to consider."). The sentencing court must also consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). A court that imposes a

sentence outside the applicable advisory guidelines range must do so on notice to the parties and must state "with specificity" both at sentencing and in the written judgment and commitment order its reasons for doing so. 18 U.S.C. § 3553(c).  Based on the § 3553(a) factors, as set forth below, the government respectfully submits that a guideline sentence of imprisonment is warranted.

A.   SERIOUSNESS OF THE OFFENSE, PROMOTION OF RESPECT FOR THE LAW, AND PROVISION OF JUST PUNISHMENT

Based on the nature of the defendant's crimes and conduct, there is a compelling need to deter future similar conduct by him and other like-minded individuals who exploit children for their own sexual gratification.  Sexual abuse and sexual exploitation of children are deplorable offenses that cannot be tolerated in our society.  The defendant betrayed the community's trust by committing direct offenses against at least two children.  The defendant used his position in the Boy Scouts as a vehicle for his heinous conduct.  The offense against Victim 2, whom the defendant considered a best friend and mentee, involved a sex act and was committed when the victim was in his care and custody and further, while the victim was sleeping and unable to resist.  It is also telling that the defendant chose Victim 2 to prey upon, as he describes him as "close to the Autism Spectrum Disorder with no friends."  PSR ¶ 80.  Another fact which made Victim 2 especially vulnerable.

With respect to Victim 1, the defendant's offense involved planning and preparation, and indicates that the defendant was not acting on impulse and rather was carefully calculated in targeting Victim 1, engaging in a scheme to receive child pornography for his own sexual gratification.  Not only did the defendant create a completely fake female

3

persona — going to such lengths as sending nude pictures of a girl to a young boy and creating a fake email address — to lure Victim 1 into creating child pornography, the defendant betrayed the trust that Victim 1 had in him.  By manipulating Victim 1 and continually goading him over a period of time into emailing nude pictures and promising that he was conversing with a real girl, the defendant exploited the relationship he had with Victim 1 in a carefully concocted plan.

The effect of the defendant's actions extend beyond Victim 1 and Victim 2 and their families.  The members of the Boy Scout troop as well as the defendant's community continue to reel from the defendant's crimes. The boys in the troop were exposed to the details of the defendant's shocking conduct perpetrated on a fellow member and were forced to — and will likely forever — question the innocent trust they so blindly placed in mentors, leaders and teachers.  The innocence lost as a result of the betrayal of trust can never be returned.

The nature of the child pornography received by the defendant and the other pornography possessed by the defendant as part of the case, presents another disturbing aspect of this case. As outlined in the PSR, several of the images involved in the case depicted children less than 5 years of age engaged in sexually explicit conduct. A review of the digital evidence indicates that many of the children depicted are in fact infants, and appear to be between 0 and 2 years in age. It is beyond comprehension how any person could gain sexual gratification from the rape and torture of such small young children. The defendant's possession of these images also makes it difficult for the government to accept

the defendant's rationalization that he sought out child pornography to understand and deal with his own victimization between the ages of seven and nine years old. *See* PSR, ¶ 80. If this was true, there would be no reason to conceal his identity to trick a boy into sending child pornography, or to receive an image of a nude female baby (less than 2 years old), with a pacifier in her mouth, whose hands and legs are bound with a black rope while a sex object is inserted into her vagina. *See* PSR ¶ 17.

To the extent that the defendant suggests there is a correlation between being a victim of child molestation and his later engaging in possession, receipt, distribution, and production of child pornography, the United States questions that correlation. While the correlation may appear attractive as an explanation for inexplicable conduct, reality does not bear it out—girls, who make up a large percentage of child exploitation victims, do not make up an equally large percentage of child exploitation offenders.

Studies and literature on this topic have not found any clear causal link between experiencing child sexual abuse and perpetrating such an abuse as an adult. It is clear, however, that the majority of victims of child sexual abuse do not become perpetrators themselves. "The victim-offender cycle in male sexual abuse has been popularized as an explanation of why some males sexually offend. However, there are serious limitations to this explanation . . . ." Lambie, Ian et al., "Resiliency in the victim-offender cycle in male sexual abuse" in Sex Abuse: A Journal of Research and Treatment 14(1) (2002) at 43. *See also* Glasser, M. et al., "Cycle of child sexual abuse: links between being a victim and becoming a perpetrator" in The British Journal of Psychiatry 179 (2001) at 488 (noting that

"the data do not provide strong support for a cycle of sexual substantial proportion of male perpetrators"); and Briggs, F. and R. Hawkins, "A Comparison of the Childhood Experiences of Convicted Male Child Molesters and Men who were Sexually Abused in Childhood and Claimed to be Nonoffenders" in Child Abuse & Neglect 20(3) (1996) at 230 (concluding that "[S]exual abuse at particular ages and frequency of abuse do not of themselves necessarily lead to an increased likelihood of perpetuating abuse across generations.").

In any event, the defendant's victimization does not justify or excuse his sexually exploitive conduct against the young men who trusted him and the other victims in the pictures that the defendant possessed. The appropriate response is to encourage services and counseling, in combination with a substantial sentence that reflects the seriousness of his conduct.

**B.    THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT AND THE NEED TO DETER FUTURE CRIMES AND TO PROTECT THE PUBLIC**

As already noted, through his long standing position with the Boy Scouts, the defendant gained the trust of parents and their children. As an assistant troop leader, he was placed in a position of trust and close proximity to at least one of the victims. In his own letter to the Court, the defendant notes that the parents and families of scouts welcomed him into their lives, homes, and families. In fact, several parents trusted him enough to allow their children to remain under his supervision on an overnight trip, a decision which surely does not come easily, never imagining that the defendant would take advantage of his position to sexually exploit a child. The defendant chose to betray the faith

placed in him and victimize a vulnerable child in his care—a child whose family had welcomed the defendant into their lives.  He selfishly chose to remain as a leader in the Boy Scout troop, and as an employee at Child and Family Services, working in close proximity to children, while simultaneously exploiting children in an attempt to understand his own victimization.

The government submits that such an egregious abuse of trust warrants a guideline term of imprisonment.  Furthermore, a substantial sentence of imprisonment would deter other would-be criminals from engaging in similar conduct.

## CONCLUSION

For all the reasons discussed above, the government recommends a sentence within the guidelines range.

DATED: Buffalo, New York, February 12, 2018.

>	JAMES P. KENNEDY, JR.
> United States Attorney
>
> BY:	s/ STEPHANIE LAMARQUE
> Assistant United States Attorney
> United States Attorney's Office
> Western District of New York
> 138 Delaware Avenue
> Buffalo, New York 14202
> 716-843-5894
> Stephanie.Lamarque@usdoj.gov

7